[No. B150373. Second Dist., Div. Three. June 19, 2003.]

CENTURY SURETY COMPANY, Plaintiff and Appellant, v.
UNITED PACIFIC INSURANCE COMPANY et al., Defendants and
Respondents.

## COUNSEL

O'Hara, Nardi & Barnes, Callie C. O'Hara, Denise Nardi, David T. Hayek and Randel L. Ledesma for Plaintiff and Appellant.

Tressler, Soderstrom, Maloney & Priess, Mary E. McPherson, David Simantob and Rina Carmel for Defendant and Respondent Lumbermens Mutual Casualty Company.

No appearance for Defendants and Respondents United Pacific Insurance Company and Reliance National Insurance Company.

## OPINION

**CROSKEY, Acting P. J.**—In this case, we are asked to determine the enforceability of an "other insurance" clause in a liability policy issued by the appellant Century Surety Company (Century). That clause provided Century's coverage for its insured would be "excess" to the coverage of other "valid and collectable insurance." Century was one of four successive insurers that had provided coverage to a common insured over a five-year period. One of those other insurers was the respondent herein, Lumbermens Mutual Casualty Company (LMC).[1]

After the common insured tendered defense of a suit for damages that had been filed against it, LMC, along with United and Reliance, accepted the tender and agreed to provide, and did provide, a defense under a reservation of rights; ultimately, those insurers settled the case. Century, however, rejected the tender and refused to provide a defense, claiming that its coverage was "excess" to that of the other insurers. Century claimed that it had no duty to participate as the underlying claim never threatened to exhaust the primary coverage of the other three insurers. When those insurers made demand upon Century for contribution, it filed this action seeking a declaratory judgment validating its coverage position. The trial court granted the motion for summary judgment filed by LMC and the other two insurers.

Our review of the relevant cases dealing with this issue persuades us that the proper resolution of this dispute is to ignore Century's excess clause and compel an equitable proration among all four of the insurers. We will therefore affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

This dispute between insurers arises out of an underlying action in which their common insured, County Line Framing, Inc. (County Line), was sued.

[1]The other two insurers were United Pacific Insurance Company (United) and Reliance National Insurance Company (Reliance). While these two insurers are not parties to this appeal, they were parties below and their legal position was identical to that asserted by LMC on appeal.

[2]There are no undisputed facts; indeed, the facts we recite are set out in the written stipulation of the parties and filed in support of their respective cross-motions for summary judgment.

The complaint in that action was filed by Ronald Arterberry and several other homeowners in certain residential developments located in Imperial County that had been constructed by Lewis Homes of California (Lewis Homes), a general contractor. After it was served with the complaint, Lewis Homes filed cross-complaints against several of its subcontractors, one of which was County Line.

County Line was covered during the relevant period by a series of successive commercial general liability policies issued by four different insurers over a five-year period beginning on January 15, 1993, through February 1, 1998. United (policy No. NSA 1330803) provided coverage from January 15, 1993, through January 15, 1994; Reliance (policy No. NSA 1631850) was on the risk from January 15, 1994, through February 1, 1996; and LMC issued a policy (No. 3MF 729413-00) for the period from February 1, 1996, through February 1, 1997. Century issued a policy (policy No. CCP 141899) for the period from February 1, 1997, through February 1, 1998.

County Line tendered defense and indemnity of the underlying Arterberry action to United and Reliance in October 1997. Subsequently, it also tendered defense and indemnity of that action to LMC and Century in April 1998.

Each of the four policies included ISO Form CG 1 11 88 and, therefore, contained a number of identical policy provisions. All of the policies, for example, provided that the insurer was obligated to "pay those sums the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies" and had the duty to defend any "suit" seeking such damages. Each of the policies also provided that the insurance applied to "property damage" only if the damage was caused by an "occurrence" during the policy period. They each also contained identical definitions of "occurrence" and "property damage."

The problem before us, however, arises from the principal difference between Century's policy and the other three. The policies issued by United, Reliance and LMC all included the same *"other insurance"* provision from ISO Form CG 1 11 88:

"4.   Other Insurance.

"If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

"a.   Primary Insurance

"This insurance is primary except when b. below applies [subparagraph b does *not* apply in this matter]. If this insurance is primary, our obligations are not affected unless any of the other insurance is primary. Then, we will share with that other insurance by the method described in c. below . . . . [¶] . . . [¶]

"c.   Method of Sharing. If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers."

The Century policy, however, included a "Contractors Amendatory Endorsement" that, inter alia, expressly replaced the "other insurance" provision of ISO Form CG 1 11 88 as follows:

"6.   **OTHER INSURANCE**

"It is agreed that condition 4. Other Insurance of Section IV - Commercial General Liability Conditions is deleted and replaced by the following:

"4.   Other Insurance:

"If other valid and collectible insurance is available to any insured for a loss we cover under Coverage A or B of this Coverage Part, then this insurance is excess of such insurance and we will have no duty to defend any claim or 'suit' that any other insurer has a duty to defend."

On January 14, 1998, after receiving tender of the Arterberry action, Reliance and United agreed to provide a defense to County Line, subject to a reservation of rights. As already noted, County Line subsequently tendered

defense of the action to LMC in April of 1998 and LMC agreed to defend County Line, also subject to a reservation of rights.

As a result of the acknowledgment of a duty to defend by United, Reliance and LMC, Century advised County Line that the "other insurance" clause in its policy provided that *its* coverage was "excess [to] any other valid and collectible primary insurance" and that, therefore, "[Century] would only respond for defense or indemnity in the event the applicable underlying horizontal layer of primary coverage exhausts . . . ."

United, Reliance and LMC went forward and provided a defense to County Line in the Arterberry action until the case settled in May 2000. Century did not participate. United, Reliance and LMC paid defense fees and costs totaling $83,553,52 and contributed $5,000 to County Line's settlement of the action. Relying on the language of its "other insurance" clause, Century denied that it had any obligation to provide either a defense or indemnity to County Line until coverage under the United, Reliance and LMC policies had been exhausted. Put another way, Century took the position that under the clear terms of its policy, its coverage was *excess* to the coverage of the other three insurers. The indemnity coverage afforded by the United, Reliance and LMC policies was never exhausted at any relevant time. Thus, Century argues, its obligation to provide a defense or indemnity never arose.

Anticipating the dispute with the other insurers, Century filed this action for declaratory relief on July 7, 1999. Century sought a determination that it had no duty to defend or indemnify County Line in the underlying Arterberry action. United, Reliance and LMC all filed answers, but LMC also filed a cross-complaint seeking a declaration that Century did have a duty to *defend* County Line in the underlying action and that it was liable to contribute a proportional reimbursement of the amount expended by LMC in defending that action.

The parties all stipulated to the facts recited above and then filed cross-motions for summary judgment. The trial court held that Century was a primary insurer and as such had a duty, along with the other three primary insurers, to defend and indemnify the common insured. Therefore, it was required to share a contributive burden for the defense and indemnity of County Line in the underlying Arterberry action. For that reason, the trial court denied Century's motion and granted the motions filed by United,

Reliance and LMC. Judgment was thereafter entered against Century on August 23, 2001,[3] and it has filed a timely appeal.[4]

## CONTENTIONS OF THE PARTIES

Century contends that the trial court erred in granting summary judgment to the other three insurers. The terms of its policy, Century argues, clearly provide that its coverage will be "excess" to any other valid and collectible insurance and therefore it is not liable to provide coverage where such other insurance was present. It claims that it is entitled to the benefit of the contractual bargain that it made with its insured.

As we explain below, there are sound jurisprudential and public policy reasons, reflected in a growing number of recent appellate decisions, that support the rejection of Century's position.

## DISCUSSION

### 1. *Standard of Review*

This case comes to us on stipulated facts. The parties agree that summary judgment *in favor of someone* is appropriate. ■ The issue before us turns upon the proper interpretation and application to be given to the language in a policy of insurance and that is a question of law. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].) We thus review this matter de novo, not being bound by the decision or

---

[3]The trial court's final judgment provided in relevant part: "Judgment is granted in United Pacific/Reliance and LMC's favor on Century's complaint. Accordingly, this court declares that Century is not entitled to the declaration it seeks in Century's complaint because Century's policy number CCP 141899, issued to named insured County Line Framing, Inc., is primary insurance. Because its policy is primary insurance, Century shares with United Pacific/Reliance and LMC duties to defend and indemnify County Line Framing, Inc., against the underlying action entitled *Arterberry, et al. v. Lewis Homes of California, et al.,* Imperial County Superior Court, Case No. 92227 ('the underlying action'). [¶] Judgment is further granted in LMC's favor on its cross-complaint against Century and Century is to be allocated a specific amount of County Line Framing, Inc.'s defense fees and indemnity costs against the underlying action, which it must reimburse to United Pacific/Reliance and LMC. The court determines that the most equitable manner in which to apportion the expense of defense and the cost of settlement is by the number of years each insurer was on [the] risk. In this case, Century was on [the] risk one out of five total years of insurance on risk. The total defense fees and indemnity costs of County Line Framing, Inc., against the underlying action are $88,553.52. One-fifth of this amount (20%) is $17,710.70. Thus, Century must pay to United Pacific/Reliance and LMC $17,710.70, plus interest in the amount of 10% per annum calculated from July 1, 2000, all to be divided among United Pacific/Reliance and LMC as they see fit."

[4]As already indicated, neither United nor Reliance is a party to this appeal, as neither has appeared herein.

reasoning of the trial court. (*Pacific Indem. Co. v. Bellefonte Ins. Co.* (2000) 80 Cal.App.4th 1226, 1232 [95 Cal.Rptr.2d 911].) " 'We apply a de novo standard of review to an order granting summary judgment when, on undisputed facts, the order is based on the interpretation or application of the terms of an insurance policy.' [Citation.]" (*Ibid.*)

## 2. General Coverage Principles Relating to "Other Insurance" Clauses

■ There is a distinction between primary and excess insurance coverage that must be first understood. "*Primary* coverage is insurance coverage whereby, *under the terms of the policy*, liability attaches *immediately* upon the happening of the occurrence that gives rise to liability. [Citation.] Primary insurers generally have the primary duty of defense. [¶] '*Excess*' or *secondary* coverage is coverage whereby, *under the terms of the policy*, liability attaches only after a predetermined amount of primary coverage has been exhausted." (*Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.* (1981) 126 Cal.App.3d 593, 597-598 [178 Cal.Rptr. 908], italics in original, fn. omitted.)

The "excess" insurance referred to in this definition is that *secondary* insurance which provides coverage after other *identified* insurance is no longer on the risk. The identification of the underlying primary insurance may be as to (1) a particular policy or policies that are specifically described or (2) underlying coverage provided by a particular and specifically described insurer. In short, excess insurance is insurance that is expressly understood by both the insurer and insured to be secondary to specific underlying coverage which will not begin until *after* that underlying coverage is exhausted and which does not broaden that underlying coverage. (*Wells Fargo Bank v. California Ins. Guarantee Assn.* (1995) 38 Cal.App.4th 936, 940 [45 Cal.Rptr.2d 537].) That is not the kind of "excess" insurance involved in this case.

■ The "excess" insurance problem before us arises when one insurer attempts, through the use of a so-called other insurance clause, to reduce a primary coverage obligation into a more limited excess liability. "Insurance policies commonly include 'other insurance' provisions which 'attempt to limit the insurer's liability to the extent that other insurance covers the same risk.' [Citation.] One subcategory is known as 'pro rata' provisions, which look to limit the insurer's liability to 'the total proportion that its policy limits bear to the total coverage available to the insured.' [Citation.] There is another subcategory known as 'excess only' clauses, which require the exhaustion of other insurance; in effect, this insurer does not provide primary coverage but only acts as an excess insurer. [Citation.] A final subcategory of 'escape' clauses extinguishes the insurer's liability if the loss is

covered by other insurance. [Citations.]" (*Commerce & Industry Ins. Co. v. Chubb Custom Ins. Co.* (1999) 75 Cal.App.4th 739, 743-744 [89 Cal.Rptr.2d 415].)

■ " 'Escape' clauses came to be so named because they permit an insurer to make a seemingly ironclad guarantee of coverage, only to withdraw that coverage (and thus escape liability) in the presence of other insurance. [Citation.] When 'excess only' clauses are found in primary liability policies, they are treated the same way as escape clauses. [Citations.] Because these types of provisions are disfavored, courts have developed a method of overriding them—'When two or more applicable policies contain such clauses, both liability and the costs of defense should ordinarily be prorated according to the amount of coverage afforded.' [Citations.] The reason for this rule is that the conflicting provisions are deemed essentially irreconcilable; if given effect competing clauses would strand an insured between insurers disclaiming coverage in a manner reminiscent of Alphonse and Gaston. [Citations.] Courts have found for the pro rata solution when confronted by a variety of conflicts between differing types of 'other insurance' provisions. . . . [¶] A predicate for prorating policies with conflicting 'other insurance' provisions is that the policies operate on the *same* level of coverage, that is to say, two or more policies apply to the *same* damage or loss suffered by the *same* party. [Citations.] Put another way, '[a]n "other insurance" dispute can only arise between carriers on the same level, it cannot arise between excess and primary insurers.' [Citation.]" (*Commerce & Industry Ins. Co. v. Chubb Custom Ins. Co., supra,* 75 Cal.App.4th at pp. 744-745, italics added.)

### 3. *Century Is Required to Prorate*

■ As the above discussion suggests, problems arise when two or more insurers providing coverage at the *same* level have "other insurance" clauses in their respective policies. That is the precise problem presented here. There is no question that Century sold, and County Line purchased, a *primary* policy providing coverage for the 1997-1998 period. Indeed, Century's policy was the only policy that *expressly* provided County Line coverage for that period. It is because we have here a continuing-loss liability problem and United, Reliance and LMC, as the insurers for the preceding four years, had a continuing-loss coverage liability, that we have a multiple insurer dispute. Whatever may be said about the merits of Century's attempt to limit its liability to "excess" coverage, it is clear that it was not, and it cannot claim to be, a true excess or secondary insurer as we have described that term. Century was one of County Line's *primary* insurers on the claim embodied in the underlying Arterberry action. What Century seeks to do

here is enforce its "excess" other insurance clause to avoid the contribution and allocation claims of the other insurers that had discharged *their* primary coverage duty to County Line.[5]

Historically, it has been generally true that terms of coverage will be honored whenever possible. A number of cases have articulated the view that courts will "generally honor the language of excess 'other insurance' clauses when no prejudice to the interests of the insured will ensue. However, there are many exceptions. For example, where two or more primary insurers' policies contain excess 'other insurance' clauses purporting to be excess to each other, the conflicting clauses will be ignored and the loss prorated among the insurers on the ground the insured would otherwise be deprived of protection. [Citations.] Thus, although a true excess insurer— one that is solely and explicitly an excess insurer providing only secondary coverage—has no duty to defend or indemnify until all the underlying primary coverage is exhausted or otherwise not on the risk, *primary* insurers with conflicting excess 'other insurance' clauses *can* have immediate defense obligations. [Citation.] [¶] 'Excess-only' provisions often collide with 'pro rata' provisions. The Supreme Court has 'expressly decline[d] to formulate a definitive rule applicable in every case in light of varying equitable considerations which may arise, and which affect the insured and the primary and excess carriers, and which depend upon the particular policies of insurance, the nature of the claim made, and the relation of the insured to the insurers. [Citation.]' [Citation.] *Although it is difficult to harmonize the many cases dealing with this situation, several recent opinions of the Courts of Appeal have held that in cases of conflict between liability insurance policies stating coverage is excess over all other available insurance and liability insurance policies providing for pro rata contribution, the 'excess-only' policies must contribute pro rata to the coverage afforded by the 'proration-only' polices.* [Citations.] [¶] These holdings are based on a variety of public policy considerations. 'Excess-only' provisions in otherwise primary liability insurance policies have been analogized to so-called 'escape' clauses

---

[5]We reject Century's argument that the language of LMC's "other insurance" clause constitutes a consent to Century's status as an excess insurer. It does not; indeed, it does the opposite. LMC's policy clearly specifies that its obligation to defend and pay all covered damages up to the amount of its policy limits is unaffected as long as there are no other primary insurers on the risk. In claiming that this amounts to a consent to Century's claim to excess status, Century necessarily must assume its conclusion. LMC's concession would only apply if Century were in fact an excess insurer. Such policy language, however, does not constitute a concession or agreement that Century is entitled to be treated as an excess insurer. The principal authority relied upon by Century (*American Continental Ins. Co. v. American Casualty Co.* (1999) 73 Cal.App.4th 508, 516 [86 Cal.Rptr.2d 560]) involved different policy language, and the plaintiff insurer itself interpreted its own policy in a way that sanctioned excess status for the defendant insurer. The court in *American Continental* expressed puzzlement at the plaintiff insurer's concession. (*Id.* at p. 516, fn. 2.) That, however, is most certainly not the situation here.

whereby coverage purports to disappear in the presence of other insurance. Such 'escape' clauses are generally disfavored as a matter of public policy. [Citations.] In cases of mutually irreconcilable 'excess other insurance' provisions, the law generally favors proration among carriers. [Citations.] Several courts have noted that imposing the entire liability for a loss on the insurer with a policy providing for pro rata coverage would annul that policy's language, and create the anomaly that courts will only predictably enforce proration between policies when they all have conflicting 'excess other insurance' language *barring* proration. [Citations.] Giving 'excess other insurance' clauses priority over policies providing for pro rata apportionment of liability among policies is completely unrelated to the original historical purpose of such 'other insurance' clauses, which was to prevent multiple recoveries by *insureds* in cases of overlapping insurance policies providing coverage for the same loss. For these reasons, among others, Division One of this court recently reaffirmed that '[t]he general rule, when multiple polices share the same risk but have inconsistent "other insurance" clauses, is to prorate according to the policy limits.' [Citation.]" (*Fireman's Fund Ins. Co. v. Maryland Cas. Co.* (1998) 65 Cal.App.4th 1279, 1304-1306 [77 Cal.Rptr.2d 296], initial and last italics in original, other italics added.)

██ The Supreme Court cited these principles and authorities with approval in *Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059 [124 Cal.Rptr.2d 142, 52 P.3d 79]. The high court endorsed the proposition that " 'other insurance' clauses that attempt to shift the burden away from one primary insurer wholly or largely to other insurers have been the objects of judicial distrust. '[P]ublic policy disfavors "escape" clauses, whereby coverage purports to evaporate in the presence of other insurance. [Citations.] This disfavor should also apply, to a lesser extent, to excess-only clauses, by which carriers seek exculpation whenever the loss falls within another carrier's policy limit.' [Citations.] Partly for this reason, the modern trend is to require equitable contributions on a pro rata basis from *all primary insurers* regardless of the type of 'other insurance' clause in their policies. [Citations.]" (*Id.* at pp. 1079-1080, italics added.)

Unfortunately, there are a number of older appellate decisions that cannot be entirely harmonized with the more modern jurisprudential trend discussed above. Indeed, the older cases appear to go both ways on this issue. A number of those cases are briefly set forth and summarized in *CSE Ins. Group v. Northbrook Property & Casualty Co.* (1994) 23 Cal.App.4th 1839 [29 Cal.Rptr.2d 120].[6]

These older opinions, however, do not look to rationale, but rather simply to precedent. As the *CSE* court points out, the lineage of the cases favoring

---

[6] " 'Excess-only' provisions have often collided with 'proration' provisions, with results that cannot be harmonized. (E.g., *Pacific Employers Ins. Co. v. Maryland Casualty Co.* (1966)

the excess only clause over the proration clause can be traced back to 40-year-old automobile insurance cases (*Pacific Employers Ins. Co. v. Maryland Casualty Co., supra,* 65 Cal.2d 318, disapproved on another point in *Herzog v. National American Ins. Co., supra,* 2 Cal.3d 192, 197-199; *American Automobile Ins. Co. v. Republic Indemnity Co.* (1959) 52 Cal.2d 507 [341 P.2d 675]) that addressed the owner versus driver problem and the priority of liability that their respective insurers should bear. The solution reached in the *American Automobile* case was ultimately codified in 1970 (see Ins. Code, § 11580.9). The principles codified in Insurance Code section 11580.9, however, are intended to apply only in automobile cases. Thus, neither the decisions in *Pacific Employers* or *American Automobile,* nor the statutory provision based thereon, can properly be read as establishing a *general* rule that excess clauses are favored over proration clauses.

As the Supreme Court has made clear, " 'The reciprocal rights and duties of several insurers who have covered the same event do not arise out

65 Cal.2d 318, 328-329 [54 Cal.Rptr. 385, 419 P.2d 641], disapproved on another point in *Herzog* v. *National American Ins. Co.* (1970) 2 Cal.3d 192 [84 Cal.Rptr. 705, 465 P.2d 841] [two policies provided for proration and a third said it was excess only; held, the two policies prorate, and the third is excess only]; *Hartford Accident & Indemnity Co.* v. *Sequoia Ins. Co.* (1989) 211 Cal.App.3d 1285, 1302 [260 Cal.Rptr. 190] [one umbrella policy said it was excess only but would prorate, second umbrella policy said it was excess only; held, the two policies must prorate]; *Employers Reinsurance Corp.* v. *Phoenix Ins. Co.* (1986) 186 Cal.App.3d 545, 556-559 [230 Cal.Rptr. 792] [one policy said excess only, two other policies said excess only but will prorate; held, all three must prorate]; *Employers Reinsurance Corp.* v. *Mission Equities Corp.* (1977) 74 Cal.App.3d 826 [141 Cal.Rptr. 727] [one policy said excess only, second policy said 'escape' (no coverage if other insurance exists); held second policy must be exhausted before resort to the first, adding, in dictum (at p. 831), that a proration policy must be exhausted before resort to an excess policy]; *Hartford Accident & Indem. Co.* v. *Civil Service Employees Ins. Co.* (1973) 33 Cal.App.3d 26, 34 [108 Cal.Rptr. 737] [one policy said prorate, second policy implied it was excess; held, first policy must be exhausted before resort to the second]; *Truck Ins. Exchange* v. *Interinsurance Exchange* (1973) 33 Cal.App.3d 984, 988-989 [109 Cal.Rptr. 458] [in dictum, a prorated policy must be exhausted before resort to an excess policy]; *Owens Pacific Marine, Inc.* v. *Insurance Co. of North America* (1970) 12 Cal.App.3d 661, 668-669 [90 Cal.Rptr. 826] [one policy said prorate, second policy said excess; held, the policies do not prorate, and the first policy must be exhausted before resort to the second]; *Donahue Constr. Co.* v. *Transport Indem. Co.* [(1970)] 7 Cal.App.3d 291, 301-303 [86 Cal.Rptr. 632] [same]; *Firemen's Fund etc. Ins. Companies* v. *State Farm etc. Ins. Co.* (1969) 273 Cal.App.2d 445 [78 Cal.Rptr. 38] [one policy said prorate, second policy said excess, adding an escape provision of no practical applicability in the particular case; held, the policies do not prorate, and the first policy must be exhausted before resort to the second]; *Peerless Cas. Co.* v. *Continental Cas. Co.* (1956) 144 Cal.App.2d 617, 619-623 [301 P.2d 602] [one policy said prorate, second policy said excess, adding a 'more or less camouflaged' escape provision of full applicability in the particular case; held, the policies must prorate]; *Air etc. Co.* v. *Employers' Liab. etc. Corp.* (1949) 91 Cal.App.2d 129 [204 P.2d 647], disapproved on another point in *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 429 [296 P.2d 801, 57 A.L.R.2d 914] [one policy said prorate, second policy clearly said escape to an extent fully applicable in the particular case; held, the policies must prorate].)" (*CSE Ins. Group v. Northbrook Property & Casualty Co., supra,* 23 Cal.App.4th at pp. 1843-1844, fn. omitted.)

of contract, for their agreements are not with each other. . . . Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden. As these principles do not stem from agreement between the insurers their application is not controlled by the language of their contracts with the respective policy holders.' " (*Signal Companies, Inc. v. Harbor Ins. Co.* (1980) 27 Cal.3d 359, 369 [165 Cal.Rptr. 799, 612 P.2d 889, 19 A.L.R.4th 75], quoting from *Amer. Auto. Ins. Co. v. Seaboard Surety Co.* (1957) 155 Cal.App.2d 192, 195-196 [318 P.2d 84].)

■ Applying these principles, and the important public policies on which they are based, we can only conclude that Century is liable to contribute on some equitable basis to the defense and indemnity expenses of United, Reliance and LMC. The Century "other insurance" clause and the pro rata clauses of the other three insurers are mutually repugnant. If we enforce Century's clause, then we cannot enforce the clauses of the other primary insurers.

Thus, the only proper result is to ignore all of the clauses and require some equitable pro rata apportionment. This result is consistent with the public policy disfavoring escape clauses whereby promised coverage evaporates in the presence of other insurance. (See *Argonaut Ins. Co. v. Transport Indem. Co.* (1972) 6 Cal.3d 496, 508 [99 Cal.Rptr. 617, 492 P.2d 673].) Since Century's excess clause is a form of escape clause and, in the coverage facts of this case, has the identical effect, the same "disfavored" policy should apply.

As the *CSE* court put it (and with only contextual paraphrase): "to impose the entire liability on the issuer of the prorated policy would annul the proration clause. It would, in the process, also create an anomaly. If [Century's] other-insurance clause were identical to the [clauses of the other three insurers] under settled law the [differing] policies would prorate. To rule in [Century's] favor, we would have to embrace the proposition that an insurance policy will prorate if and only if it states that it will not prorate. [The use by United, Reliance and LMC] of proration language in [their policies] should not have the effect of destroying proration." (*CSE Ins. Group v. Northbrook Property & Casualty Co., supra,* 23 Cal.App.4th at p. 1846.)

As Century argues only that it should escape liability altogether and raises no objection to the specific proration formula adopted by the trial court, we have no need to further consider the matter. In any event, our review of this record reflects that the allocation specified in its order was well within the trial court's discretion. (See *Fireman's Fund Ins. Co. v. Maryland Cas. Co., supra,* 65 Cal.App.4th at p. 1308.)

## DISPOSITION

The judgment filed on August 23, 2001 is affirmed. LMC shall recover its costs on appeal.

Kitching, J., and Aldrich, J., concurred.

On June 25, 2003, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied September 17, 2003. Kennard, J., did not participate therein.