[No. E033110. Fourth Dist., Div. Two. July 14, 2004.]

TRAVELERS CASUALTY AND SURETY COMPANY, Plaintiff and Respondent, v.
TRANSCONTINENTAL INSURANCE COMPANY et al., Defendants and Appellants;
FEDERAL INSURANCE COMPANY, Intervenor and Respondent.

COUNSEL

Law Offices of Adrienne D. Cohen, Adrienne D. Cohen, Elizabeth T. Evans and Craig A. Barnes for Defendants and Appellants.

Correll, Garchie & Edwards, James E. Friedhofer and Susan E. Leonard for Intervenor and Respondent.

OPINION

KING, J.—

## INTRODUCTION

Federal Insurance Company (Federal) issued an "excess" insurance policy to a real estate developer. The policy provided for a defense to the developer upon the exhaustion of a specific policy, which the parties agreed had been exhausted. The developer was also named as an "additional insured" on insurance policies issued to subcontractors working on the developer's project. The developer was sued for construction defects on the project. After paying a portion of the cost to defend the developer, Federal sought a judicial declaration that it did not have a duty to defend because the subcontractors' insurance was unexhausted "primary" insurance. The trial court granted Federal's motion for summary adjudication, ruling that Federal did not have a duty to defend and was entitled to reimbursement of its defense costs. Based in part on this ruling, the court subsequently granted Federal's motion for summary judgment and entered judgment for Federal in the amount of $203,245.85, plus costs.

Appellants Transcontinental Insurance Company, Continental Insurance Company, and Valley Forge Insurance Company (collectively CNA)[1] challenge the trial court's order granting summary adjudication on Federal's first

---

[1] The appellants are referred to in the record as "CNA companies" and referred to by all parties on appeal in their briefs simply as "CNA."

cause of action.[2] CNA contends that Federal's duty to defend under that policy was triggered because the specific primary policy referenced in the excess policy had been exhausted. We agree and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Excess Policy*

Sunrise Desert Partners (Sunrise) was the developer and general contractor of a real estate development project known as "PGA West II." Federal issued two policies to Sunrise: a "commercial general liability" policy (the Primary Policy) and a "commercial umbrella" policy (the Excess Policy). Although the Primary Policy is not part of the record, it is described in the Excess Policy as covering "all premises and operations" of Sunrise. It is further described as having policy limits for different types of coverage ranging from $1 million to $2 million. These policy limits were exhausted by the payment of claims in 1997 on other Sunrise projects.[3]

The Excess Policy provides two types of coverage for Sunrise—"Coverage A" and "Coverage B." Under Coverage A, Federal agrees to "pay on behalf of the **insured**, that part of **loss** covered by this insurance in excess of the total applicable limits of **underlying insurance**" up to $15 million. The phrase "underlying insurance" is defined as "the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy." The "Schedule of Underlying Insurance" lists seven insurance policies, including the Primary Policy.[4]

Under Coverage B, which is described as "Umbrella Liability Insurance," Federal agrees to pay "damages the **insured** becomes legally obligated to pay by reason of liability imposed by law or assumed under an **insured contract** because of **bodily injury**, **property damage**, **personal injury**, or **advertising injury**" in excess of a certain limit or the amount payable by "**other insurance**, whichever is greater." Coverage B insurance does not apply to losses for which insurance is afforded under underlying insurance.

---

[2] Although the court's order granting Federal's motion for summary adjudication was a nonappealable intermediate order when it was made, we have jurisdiction to review that decision because a final judgment was subsequently entered. (Code Civ. Proc., § 906.)

[3] "Primary coverage is 'exhausted' when the primary insurers pay their policy limits in settlement or to satisfy a judgment against the insured." (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2003) ¶ 8:86, pp. 8-44 & 8-45.)

[4] The other scheduled policies are described in the Excess Policy as "Employers' Liability," "Automobile Liability," "Employee Benefits Liability," "Liquor Law Legal Liability," "Professional Liability," and "Professional Liability Excess."

According to the policy, Federal's right and duty to defend Sunrise against claims against it depends upon whether the claim is covered under Coverage A or Coverage B. The "Defense and Supplementary Payments" provision of the Excess Policy states, in relevant part: "We have the right and the duty to assume control of the investigation, settlement or defense of any claim or **suit** against the **insured** for damages covered by this policy: [¶] 1. under Coverage A, when the applicable limit of **underlying insurance** has been exhausted by payment of claims; or [¶] 2. under Coverage B, when damages are sought for **bodily injury, property damage, personal injury** or **advertising injury** to which no **underlying insurance** *or other insurance applies.*" (Italics added.) Neither party contends that Coverage B applied to this case or that Federal owed a duty to defend Sunrise pursuant to Coverage B. The sole issue is whether Federal maintained a duty to defend under Coverage A.

The Excess Policy also includes a section of "Exclusions," describing conduct giving rise to liability to which "this insurance does not apply," and a section of "Conditions" that are "applicable to both Coverage A and Coverage B." The "Conditions" section includes an "Other Insurance" provision, which states: "If **other insurance** applies to claims covered by this policy, the insurance under this policy is excess and we will not make any payments until the **other insurance** has been exhausted by payment of claims. This insurance is not subject to the terms or conditions of any **other insurance**." "Other insurance" is defined as "a policy of insurance affording coverage that this policy also affords. **Other insurance** includes any type of self-insurance or other mechanism by which an **insured** arranges for funding of legal liabilities. [¶] **Other insurance** does not include **underlying insurance** or a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords."

B. *The Underlying Action*

Sunrise engaged subcontractors in connection with the development of PGA West II. These subcontractors were required to have comprehensive liability insurance policies that named Sunrise as an additional insured. CNA issued insurance policies to several of the subcontractors, some or all of which named Sunrise as an additional insured under such policy. Although the subcontractors' insurance policies and the additional insured endorsements are not included in the record, it appears that the subcontractors' insurers limited their coverage of Sunrise to claims arising from the insured

subcontractor's work.[5] None of the subcontractors' insurance policies are listed in the Schedule of Underlying Insurance in Federal's Excess Policy.

PGA West II was completed in 1993. In 1999, the PGA West II homeowners association sued Sunrise and 300 unnamed "Doe" defendants for damages caused by construction defects (the Underlying Action). Federal agreed to defend Sunrise under the Excess Policy because the policy limits on the Primary Policy had been exhausted. Sunrise's defense counsel tendered the defense of the Underlying Action to various subcontractor insurers, including CNA. CNA and some of the other insurers accepted the tender, subject to reservations of rights.

Federal and another insurance company, Travelers Casualty and Surety Company (Travelers), paid for most or all of the cost of Sunrise's defense in the Underlying Action. Federal paid more than $450,000 toward the defense. The Underlying Action was settled and dismissed in 2001.

C. *The Declaratory Relief Action*

Travelers filed an action against the subcontractor insurers. Federal filed a "Complaint in Intervention" naming CNA and other subcontractor insurers as defendants. Federal's complaint asserted three causes of action labeled: (1) "Declaratory Relief–Duty to Defend"; (2) "Equitable Contribution/Reimbursement"; and (3) "Equitable Subrogation/Reimbursement."

Following the dismissal of the Underlying Action, Federal moved for summary adjudication of its first cause of action, seeking a judicial declaration that it had no duty to defend Sunrise in the Underlying Action. In a declaration supporting its motion, a Federal representative stated that the Federal Primary Policy was the "only scheduled Underlying Insurance" to the Excess Policy, and that the Primary Policy had been exhausted. The declaration further states that "Federal accepted the defense of Sunrise under the excess liability policy, given that the primary policy was exhausted, until such time as applicable primary coverage for Sunrise could be located and tendered the defense." With the exception of facts concerning payment of some defense costs, CNA did not dispute the facts asserted by Federal.

---

[5] An example of the limiting language, as set forth in a "reservation of rights" letter from CNA to Sunrise's defense counsel, is the following: "The insurance for that Additional Insured [i.e., Sunrise] is limited as follows: [¶] That person or organization is only an additional insured for its liability arising out of premises you [the insured subcontractor] own, rent, lease, or occupy, or for 'your work' for or on behalf of the Additional Insured." (Italics omitted.)

The court granted Federal's motion, ruling that Federal had no duty to defend Sunrise and was entitled to reimbursement of all its costs for defense.

Following the ruling on the motion for summary adjudication, many of the subcontractor insurers settled with Federal, reimbursing Federal for a share of the defense costs. CNA did not. In 2002, Federal filed a motion for summary judgment against CNA to recover what it contended was CNA's share of the defense costs. This motion was based, in part, upon the court's prior ruling that Federal did not have a duty to defend Sunrise. The court granted the motion and entered judgment for Federal and against CNA in the amount of $203,245.85, plus costs.

## DISCUSSION

An order granting summary adjudication based upon the interpretation or application of the terms of an insurance policy is reviewed de novo. (*Century Surety Co. v. United Pacific Ins. Co.* (2003) 109 Cal.App.4th 1246, 1255 [135 Cal.Rptr.2d 879]; *Lomes v. Hartford Financial Services Group, Inc.* (2001) 88 Cal.App.4th 127, 131 [105 Cal.Rptr.2d 471].) Issues concerning the proper interpretation and application of language in an insurance policy are questions of law, which we review de novo. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619]; *Century Surety Co. v. United Pacific Ins. Co., supra,* at pp. 1254–1255.)

"While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].) " 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs its interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.]' " (*Community Redevelopment Agency v. Aetna Casualty & Surety Co.* (1996) 50 Cal.App.4th 329, 338 [57 Cal.Rptr.2d 755] (*Community Redevelopment*), quoting *Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 666–667 [42 Cal.Rptr.2d 324, 913 P.2d 878].) "To yield their meaning, the provisions of a policy must be considered in their full context. [Citations.] Where it is clear, the language must be read accordingly. [Citations.] Where it is not, it must be read in conformity with what the insurer believed the insured understood thereby at the time of formation [citations] and, if it remains problematic, in the sense that satisfies the insured's objectively reasonable expectations." (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 45 [65 Cal.Rptr.2d 366, 939 P.2d 766].)

Under the plain language of the Excess Policy, Federal has a duty to defend Sunrise against claims covered under Coverage A when the limit of the "underlying insurance has been exhausted." Significantly, the defense obligation is not dependent upon the exhaustion of any insurance other than "underlying insurance." "Underlying insurance" is defined as specific policies listed in the Schedule of Underlying Insurance. The only applicable underlying insurance policy is the Primary Policy, which has been exhausted.

The obligation to defend upon exhaustion of the specific underlying insurance, without regard to the exhaustion of other insurance, is made clear from a comparison of the duty to defend provisions for Coverage A and Coverage B. Here, it is undisputed that the pertinent coverage is under Coverage A. Not only does the defense provision regarding Coverage A omit any reference to "other insurance," but that omission is highlighted by the explicit reference to "other insurance" regarding the duty to defend under Coverage B. Relative to Federal's duty to defend, the policy provides that Federal has "the right and the duty to assume control of the investigation, settlement or defense of any claim or **suit** against the **insured** for damages covered by this policy:

"1. under coverage A, when the applicable limit of **underlying insurance** has been exhausted by payment of claims; or

"2. under coverage B, when damages are sought for **bodily injury, property damage, personal injury** or **advertising injury** to which no **underlying insurance** or **other insurance** applies."

While the duty to defend claims covered under Coverage A is expressly triggered "when the applicable limit of **underlying insurance** has been exhausted by payment of claims," the duty to defend under Coverage B arises when neither underlying insurance nor "**other insurance** applies." The unmistakable implication of this contrast is that the duty to defend under Coverage B depends upon the absence of "other insurance," while the duty to defend under Coverage A does not. Thus, under the unambiguous and plain language of the duty to defend provisions of the Excess Policy, Federal owed Sunrise a duty to defend the claims asserted against Sunrise in the Underlying Action.

Federal contends that the "Other Insurance" provision constitutes a condition precedent to the existence of coverage and, therefore, to the duty to defend. We disagree. As we explain, the "Other Insurance" provision constitutes a condition to *payment of claims* when coverage exists, but does not constitute a condition to coverage or Federal's duty to defend.

First, the policy defines "other insurance" as "a policy of insurance affording coverage that this policy also affords. . . ." Thus, there must be coverage under both "this policy" (the Excess Policy) and "other insurance" policies before the "Other Insurance" provision will come into play. That is, the definition of "other insurance" assumes the existence of coverage under both the Excess Policy and the other insurance policy. If coverage under such multiple policies occurs, then the "Other Insurance" clause provides a condition precedent to Federal's obligation to "make payment of claims," namely, the exhaustion of other insurance. The "Other Insurance" clause specifically provides, "If **other insurance** applies to claims covered by this policy, the insurance under this policy is excess and we will not make any payments until the **other insurance** has been exhausted by payment of claims." This language expressly conditions the obligation to make "any payments"; it does not, by its terms or impliedly, condition either the existence of coverage or the duty to defend. As our state Supreme Court has explained, the duty to defend and the duty to indemnify "differ in their substance: Whereas the duty to defend 'entails the rendering of a service, viz., the mounting and funding of a defense' [citations], the duty to indemnify 'entails the payment of money' [citations]. They differ as well in their scope: Whereas the duty to indemnify may indeed be broad, the duty to defend must perforce be broader still. [Citations.]" (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 958 [103 Cal.Rptr.2d 672, 16 P.3d 94].) If Federal intended to have the exhaustion of "other insurance" be a condition *to coverage or the duty to defend*, it needed only to say so. Having not done so, we conclude that the "Other Insurance" provision is a condition to Federal's obligation to make payments only.

An additional reason why the "Other Insurance" provision is not a condition to coverage is that it is located among other provisions in the "Conditions" section of the policy as a "condition" "applicable to both Coverage A and Coverage B." This section includes provisions giving Federal rights to participate in an appeal of a judgment against Sunrise, to audit Sunrise's books and records, and to inspect Sunrise's premises and operations. The section further provides for such matters as rights to cancel the policy, the procedure for making changes to the policy, and the lack of effect to be given to titles of paragraphs in the policy. Read in the context of these other "conditions," the provisions of the "Conditions" section set forth rights, obligations, and interpretative aids "applicable to" coverage under the policy rather than conditions that must be fulfilled *prior to the existence of coverage.*

■ Third, Federal's interpretation of the "Other Insurance" provision is contrary to the rule that insurance provisions that take away or limit coverage must be conspicuous, plain, and clear. (See, e.g., *De May v. Interinsurance Exchange* (1995) 32 Cal.App.4th 1133, 1136–1137 [38 Cal.Rptr.2d 581]; see generally Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶ 4:124, p. 4-38.) Here, the "Other Insurance" provision, as interpreted by Federal, would exclude coverage and preclude any duty to defend if there was any unexhausted "other insurance." Despite this exclusionary effect of such an interpretation, there is no hint of this possibility in the "Insuring Agreements," "Defense and Supplementary Payments," or "Exclusions" sections of the policy. Rather, the "condition" is found among boilerplate provisions such as those requiring written endorsement to change the terms of the policy and providing that the stated premium "is a flat premium." If Federal intended to have coverage be dependent upon the exhaustion of "other insurance," it was required to make such an exclusionary clause conspicuous, plain, and clear. It did not do so.

■ Because the "Other Insurance" provision cannot be construed as constituting an exclusionary condition precedent to coverage, Sunrise had coverage under the Excess Policy upon the exhaustion of the Primary Policy, which obligated Federal to defend Sunrise in the underlying action.

Federal relies heavily on *Community Redevelopment.* In that case, the insured obtained two comprehensive general liability policies, one of which was issued by State Farm Fire and Casualty Insurance Company (the State Farm Policy). The insured also purchased a policy issued by Scottsdale Insurance Company (Scottsdale), "which was specifically (but not exclusively) excess to the State Farm Policy." (*Community Redevelopment, supra,* 50 Cal.App.4th at p. 334.) The State Farm policy had been exhausted in 1988. The "precise question" in *Community Redevelopment* was "whether an excess insurer, *under policy provisions such as those presented [in that case],* has any obligation, in a continuing loss case, to 'drop down' and provide a defense to a common insured before the liability limits of *all* primary insurers on the risk have been exhausted." (*Id.* at p. 332, first italics added.) The *Community Redevelopment* court answered that question, "no." In so answering, the court stated, *"Unless the provisions of an excess policy provide otherwise,* an excess insurer has no obligation to provide a defense to its insured before the primary coverage is exhausted." (*Id.* at p. 338, italics added.) Because the present policy provisions "provide otherwise," we answer the question, "yes."

In *Community Redevelopment,* the portion of the policy dealing with Scottsdale's duty to defend provided that " '[t]he company shall have the right and duty to defend any suit against the INSURED seeking damages which are payable under the above insuring Agreement . . . *provided, however, that no other insurance affording a defense or indemnity against such a suit is available to the INSURED.*' " (*Community Redevelopment, supra,* 50 Cal.App.4th at p. 335.) Thus, the Scottsdale policy specifically provided that it would provide a defense only if there was no other insurance affording a defense. Here, in contrast to the defense provisions in the Scottsdale policy, the only insurance that must be exhausted to trigger the defense obligations in the Federal Excess Policy is the "underlying insurance."

Federal contends that this result would conflict with the settled rule that "an excess or secondary policy does not cover a loss, nor does any duty to defend the insured arise, until *all* of the primary insurance has been exhausted." (*Community Redevelopment, supra,* 50 Cal.App.4th at p. 339.) This principle is referred to as "horizontal exhaustion." (*Ibid.*; *Montgomery Ward & Co. v. Imperial Casualty & Indemnity Co.* (2000) 81 Cal.App.4th 356, 365 [97 Cal.Rptr.2d 44].) However, as *Community Redevelopment* explained, "If an excess policy states that it is excess over a specifically described policy and will cover a claim when that specific primary policy is exhausted, such language is sufficiently clear to overcome the usual presumption that *all* primary coverage must be exhausted. However, that is not the case here. As the quoted provisions of Scottsdale's policy make clear . . . it was intended to be excess to *all* underlying insurance, whether such insurance was described in the schedule of underlying insurance or not." (*Community Redevelopment, supra,* 50 Cal.App.4th at p. 340, fn. 6.) Here, unlike the policy language in *Community Redevelopment,* the language of the Federal Excess Policy is "sufficiently clear" to trigger Federal's defense obligations under the Excess Policy upon the exhaustion of the underlying insurance, regardless of the existence or exhaustion of other insurance.

Based upon the facts and specific policy language presented here, we conclude that Federal owed a duty to defend Sunrise under the Excess Policy. Therefore, the trial court erred in granting Federal's motion for summary adjudication. Because the trial court's subsequent grant of summary judgment and the resulting judgment against CNA were based in part upon the grant of Federal's motion for summary adjudication, we reverse.

## DISPOSITION

The judgment and the orders on Federal's motion for summary adjudication and its motion for summary judgment are reversed. The trial court is instructed to enter a new order denying these motions. CNA shall recover its costs.

Hollenhorst, Acting P. J., and McKinster, J., concurred.

The petition of respondent Federal Insurance Company for review by the Supreme Court was denied September 29, 2004. George, C. J., did not participate therein.