13 Cal.Rptr.3d 526 (2004)
118 Cal.App.4th 1156
TRAVELERS CASUALTY AND SURETY COMPANY, Plaintiff and Respondent,
v.
CENTURY SURETY COMPANY, Defendant and Appellant.
No. G031194.
Court of Appeal, Fourth District, Division Three.
May 21, 2004.
Review Denied August 11, 2004.
*527 O'Hara Barnes, Callie C. O'Hara, Randel L. Ledesma, Beverly Hills, CA, and Pamela E. Dunn for Defendant and Appellant.
Summers & Shives, Robert V. Closson, San Diego, CA, and Kellene J. McMillan for Plaintiff and Respondent.

OPINION
RYLAARSDAM, J.
Defendant Century Surety Company appeals from the judgment awarding plaintiff Travelers Casualty and Surety Company $53,054.84 entered after the trial court granted plaintiff's motion for summary judgment. (Code Civ. Proc., § 437c.) The issue in this appeal is whether the trial court erred by finding defendant insurer had a duty to contribute on a pro rata basis to the litigation and indemnification expenses incurred by plaintiff insurer in defending a common insured sued in a construction defect lawsuit. We conclude the trial court properly so held and affirm the judgment.

FACTS
Between July 1988 and 1993, plaintiff issued commercial general liability insurance policies covering Standard Wood Structures, Inc. (Standard), a framing contractor. The policies contained a provision declaring that, if "any other insurance is also primary," plaintiff "will share with all that other insurance," either in "equal shares" where "all of the other insurance permits," or otherwise "based on the ratio of [each insurer's] applicable limit of insurance to the total applicable limits of insurance of all insurers."
Defendant issued a primary commercial general liability policy to Standard covering it between September 1996 and September 1997. Defendant's policy contained an endorsement providing as follows: "4. Other Insurance: [¶] If other valid and collectible insurance is available to any insured for a loss we cover ..., then this insurance is excess of such insurance and we will have no duty to defend any claim or `suit' that any other insurer has a duty to defend."
Between 1987 and 1990, Standard performed carpentry and framing work on Canyon Estates, a residential development. In 1998, homeowners in Canyon Estates filed a lawsuit, in part alleging continuing damage to their properties caused by defective construction work. Standard was named as a defendant.
Standard tendered the defense of the action to plaintiff, defendant, and CNA, its primary liability insurance carriers. Initially, all three insurers agreed to provide Standard with a defense. Defendant later withdrew its tender, citing its policy's other insurance clause. Plaintiff and CNA ultimately settled the Canyon Estates claims against Standard, paying $156,137.50 and $97,762.50, respectively. In addition, plaintiff spent $200,029 defending Standard in that action.
*528 Plaintiff then sued defendant for declaratory relief and equitable contribution. The trial court granted plaintiff's motion for summary adjudication of issues on its declaratory relief claim, finding defendant had a duty to defend Standard in the Canyon Estates action. Subsequently, the trial court granted plaintiff's motion for summary judgment, finding defendant's pro rata share of the defense and settlement costs represented by its "`time on the risk'" amounted to $53,054.84 and entered judgment in plaintiff's favor for that sum.

DISCUSSION
This case involves an action for declaratory relief and contribution between two insurers who provided primary insurance coverage to a common insured, Standard. We must decide whether the trial court correctly found defendant obligated to contribute, on a pro rata basis, to the defense and indemnification costs plaintiff incurred on Standard's behalf even though defendant's policy declared it would be excess to other valid and collectible insurance. As defendant recognizes, we independently review the trial court's decision. (Guz v. Bechtel National, Inc. (2000) 24 Cal.4th 317, 334, 100 Cal.Rptr.2d 352, 8 P.3d 1089.)
Both parties' policies provided Standard with coverage for property damage caused by an occurrence during the period of time each policy was in effect, including the type of loss alleged in the Canyon Estates lawsuit, that Standard's defective work caused continuous injury. (Montrose Chemical Corp. v. Admiral Ins. Co. (1995) 10 Cal.4th 645, 654-655, 685-686, 42 Cal.Rptr.2d 324, 913 P.2d 878.) Plaintiff provided liability insurance coverage to Standard between 1988 and 1993, while defendant covered it for a one-year period starting in September 1996. Furthermore, during the time each party's policy was in effect, Standard had no other liability insurance.
Defendant argues that "where two insurance policies provide coverage for the same risk and one has a standard `pro rata' other insurance clause and the other has an `excess' other insurance clause, the contract language of both policies [should] be enforced and the second policy will be deemed excess to the policy with the `pro rata' provision." Since plaintiff's policy contained a pro rata other insurance clause, defendant asserts plaintiff needed to exhaust the limits of its policy in defending and indemnifying Standard before defendant's duty to do so arose. Because plaintiff did not exhaust its policy limits, defendant continues, the trial court erred in finding defendant obligated to contribute to the defense and indemnification costs incurred. But the law in California is to the contrary.
While generally, an insurer's coverage terms will be honored if possible, there are exceptions to this rule. (Century Surety Co. v. United Pacific Ins. Co. (2003) 109 Cal.App.4th 1246, 1257, 135 Cal.Rptr.2d 879; Fireman's Fund Ins. Co. v. Maryland Casualty Co. (1998) 65 Cal.App.4th 1279, 1304, 77 Cal.Rptr.2d 296.) One exception arises where the policies of two or more insurers of a common insured, providing primary coverage for the same risk, contain conflicting "other insurance" clauses. In this circumstance, if one insurer pays more than its share of the loss or defense costs without participation from the other insurer or insurers, a right to contribution arises. (Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra, 65 Cal.App.4th at p. 1293, 77 Cal.Rptr.2d 296.) "The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer *529 from profiting at the expense of others. [Citations.]" (Ibid.)
Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra, 65 Cal.App.4th 1279, 77 Cal.Rptr.2d 296 dealt with an analogous situation. In that case, the parties issued annual liability insurance policies to a building contractor, with Maryland Casualty's policies covering it from 1975 through 1986, while Fireman's Fund's policies covered it from 1984 to 1992. All of the policies, except the last four issued by Fireman's Fund, contained pro rata other insurance clauses. Fireman's Fund's final four policies contained excess other insurance provisions. In a construction defects action alleging continuous injury that commenced in 1979, Fireman's Fund alone defended the insured and paid the settlement on its behalf. Fireman's Fund successfully sought contribution from Maryland Casualty, with the trial court allocating the defense and indemnification costs between the parties using the time on the risk method. But the court rejected Fireman's Fund's claim its last four policies should be disregarded because of their different other insurance clauses.
The Court of Appeal affirmed, noting "in cases of conflict between liability insurance policies stating coverage is excess over all other available insurance and liability insurance policies providing for pro rata contribution, the `excess-only' policies must contribute pro rata to the coverage afforded by the `proration-only' polic[i]es. [Citations.]" (Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra, 65 Cal.App.4th at p. 1305, 77 Cal.Rptr.2d 296.) It justified the exception, citing "a variety of public policy considerations. `Excess-only' provisions in otherwise primary liability insurance policies have been analogized to so-called `escape' clauses whereby coverage purports to disappear in the presence of other insurance. Such `escape' clauses are generally disfavored as a matter of public policy. [Citations.] In cases of mutually irreconcilable `excess other insurance' provisions, the law generally favors proration among carriers. [Citations.] Several courts have noted that imposing the entire liability for a loss on the insurer with a policy providing for pro rata coverage would annul that policy's language, and create the anomaly that courts will only predictably enforce proration between policies when they all have conflicting `excess other insurance' language barring proration. [Citations.] Giving `excess other insurance' clauses priority over policies providing for pro rata apportionment of liability among policies is completely unrelated to the original historical purpose of such `other insurance' clauses, which was to prevent multiple recoveries by insureds in cases of overlapping insurance policies providing coverage for the same loss. For these reasons, among others, ... `[t]he general rule, when multiple policies share the same risk but have inconsistent "other insurance" clauses, is to prorate according to the policy limits.' [Citation.]" (Id. at pp. 1305-1306, 77 Cal.Rptr.2d 296, fn. omitted; see also CSE Ins. Group v. Northbrook Property & Casualty Co. (1994) 23 Cal.App.4th 1839, 1842-1846, 29 Cal.Rptr.2d 120.)
The recent decision in Century Surety Co. v. United Pacific Ins. Co., supra, 109 Cal.App.4th 1246, 135 Cal.Rptr.2d 879 presents an even more analogous situation since it involved the present defendant and the interaction of other insurance clauses similar to those in dispute here. In Century Surety, defendant and three other insurers (collectively United Pacific) issued one-year liability policies to a building subcontractor between 1993 and 1998. United Pacific's policies contained other insurance clauses similar to the one in plaintiff's policies. Century Surety's policy contained *530 the identical other insurance clause contained in its policy which is at issue in this case. After being sued for its work on a residential development, the insured tendered defense of the action to all four insurers. United Pacific agreed to defend the insured, but Century Surety, relying on the language of its other insurance clause, declined. United Pacific ultimately paid the insured's defense costs and contributed to a settlement of the underlying action. When United Pacific demanded contribution from Century Surety, it filed a declaratory relief action.
The Court of Appeal affirmed a judgment for United Pacific. After a lengthy discussion of the relevant case law, the court concluded: "Century is liable to contribute on some equitable basis to the defense and indemnity expenses of [United Pacific]. The Century `other insurance' clause and the pro rata clauses of the other three insurers are mutually repugnant. If we enforce Century's clause, then we cannot enforce the clauses of the other primary insurers. [¶] Thus, the only proper result is to ignore all of the clauses and require some equitable pro rata apportionment. This result is consistent with the public policy disfavoring escape clauses whereby promised coverage evaporates in the presence of other insurance. [Citation.] Since Century's excess clause is a form of escape clause and, in the coverage facts of this case, has the identical effect, the same `disfavored' policy should apply." (Century Surety Co. v. United Pacific Ins. Co., supra, 109 Cal.App.4th at p. 1260, 135 Cal.Rptr.2d 879.)
The rule declared in Fireman's Fund and Century Surety Co. applies to this case. Standard did not have any other liability insurance during the time defendant's policy was in effect. Both plaintiff's and defendant's policies covered the same type of loss, but they contained conflicting other insurance clauses. Giving effect to defendant's other insurance provision, which is in the nature of an escape clause, would result in imposing on plaintiff the burden of shouldering that portion of a continuous loss attributable to the time when defendant was the only liability insurer covering Standard.
Although the California Supreme Court has not yet directly addressed the issue, a recent decision cited the foregoing exception with approval. In Dart Industries, Inc. v. Commercial Union Ins. Co. (2002) 28 Cal.4th 1059, 124 Cal.Rptr.2d 142, 52 P.3d 79, the court noted: "`Historically, "other insurance" clauses were designed to prevent multiple recoveries when more than one policy provided coverage for a particular loss.' [Citation.] On the other hand, `other insurance' clauses that attempt to shift the burden away from one primary insurer wholly or largely to other insurers have been the objects of judicial distrust. `[P]ublic policy disfavors "escape" clauses, whereby coverage purports to evaporate in the presence of other insurance. [Citations.] This disfavor should also apply, to a lesser extent, to excess-only clauses, by which carriers seek exculpation whenever the loss falls within another carrier's policy limit.' [Citations.] Partly for this reason, the modern trend is to require equitable contributions on a pro rata basis from all primary insurers regardless of the type of `other insurance' clause in their policies. [Citations.]" (Id. at pp. 1079-1080, 124 Cal.Rptr.2d 142, 52 P.3d 79.)
In addition, Signal Companies, Inc. v. Harbor Ins. Co. (1980) 27 Cal.3d 359, 165 Cal.Rptr. 799, 612 P.2d 889, a case involving a primary insurer's unsuccessful attempt to seek contribution for the defense costs from an excess insurer, recognized that, "`The reciprocal rights and duties of several insurers who have covered the *531 same event do not arise out of contract, for their agreements are not with each other.... Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden. As these principles do not stem from agreement between the insurers their application is not controlled by the language of their contracts with the respective policy holders.' [Citation.]" (Id. at p. 369, 165 Cal.Rptr. 799, 612 P.2d 889; see also Amer. Auto. Ins. Co. v. Seaboard Surety Co. (1957) 155 Cal.App.2d 192, 195-196, 318 P.2d 84.)
Noting contribution is an equitable doctrine requiring the court to consider a variety of factors, including the interests of the insured (Signal Companies, Inc. v. Harbor Ins. Co., supra, 27 Cal.3d at p. 369, 165 Cal.Rptr. 799, 612 P.2d 889), defendant claimed during oral argument that application of the pro rata contribution rule in this case would prejudice the insured's rights in this since it would obligate Standard to pay each insurer's deductible. This argument ignores the fact Standard tendered the defense of the Canyon Estates action to all of its primary insurers, including defendant.
While defendant cites several cases in support of its position, we find these authorities distinguishable. Some of them concerned litigation between primary insurers and excess insurers. (Signal Companies, Inc. v. Harbor Ins. Co., supra, 27 Cal.3d at p. 368, 165 Cal.Rptr. 799, 612 P.2d 889; Olympic Ins. Co. v. Employers Surplus Lines Ins. Co. (1981) 126 Cal.App.3d 593, 600, 178 Cal.Rptr. 908.) As noted above, that is not the case here.
Defendant also relies on decisions favoring excess only other insurance clauses over pro rata clauses. (Pacific Employers Ins. Co. v. Maryland Casualty Co. (1966) 65 Cal.2d 318, 328, 54 Cal.Rptr. 385, 419 P.2d 641, disapproved on another point in Herzog v. National American Ins. Co. (1970) 2 Cal.3d 192, 199, 84 Cal.Rptr. 705, 465 P.2d 841; Ohio Farmers Indem. Co. v. Interinsurance Exchange (1968) 266 Cal.App.2d 772, 777, 72 Cal.Rptr. 269.) But Century Surety Co. v. United Pacific Ins. Co., supra, 109 Cal.App.4th 1246, 135 Cal.Rptr.2d 879 rejected this very argument. It noted Pacific Employers and another Supreme Court decision, American Automobile Ins. Co. v. Republic Indemnity Co. (1959) 52 Cal.2d 507, 341 P.2d 675, were "automobile insurance cases [citations] that addressed the owner versus driver problem and the priority of liability that their respective insurers should bear." Since the subsequent codification of the holding in these cases (Ins.Code, § 11580.9) is "intended to apply only in automobile cases[,] ... neither the decisions ... nor the statutory provision based thereon, can properly be read as establishing a general rule that excess clauses are favored over proration clauses." (Century Surety Co. v. United Pacific Ins. Co., supra, 109 Cal.App.4th at p. 1259, 135 Cal.Rptr.2d 879; see also CSE Ins. Group v. Northbrook Property & Casualty Co., supra, 23 Cal.App.4th at p. 1844, 29 Cal.Rptr.2d 120.) We agree with this reasoning.
Next, defendant cites footnote 19 in Montrose Chemical Corp. v. Admiral Ins. Co., supra, 10 Cal.4th 645, 42 Cal.Rptr.2d 324, 913 P.2d 878. Footnote 19 simply disapproved language in California Union Ins. Co. v. Landmark Ins. Co. (1983) 145 Cal.App.3d 462, 193 Cal.Rptr. 461 "holding that both insurers in that case were jointly and severally liable for the full amount of damage occurring during the successive policy period," and noting "[a]llocation of the cost of indemnification once several insurers have been found liable to indemnify the insured for all or some portion of a continuing injury or progressively deteriorating *532 property damage requires application of principles of contract law to the express terms and limitations of the various policies of insurance on the risk. [Citations.]" (Montrose Chemical Corp. v. Admiral Ins. Co., supra, 10 Cal.4th at p. 681, fn. 19, 42 Cal.Rptr.2d 324, 913 P.2d 878.)
As noted, while the terms of an insurance policy are generally honored if possible (Century Surety Co. v. United Pacific Ins. Co., supra, 109 Cal.App.4th at p. 1257, 135 Cal.Rptr.2d 879; Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra, 65 Cal.App.4th at p. 1304, 77 Cal.Rptr.2d 296), this case concerns policies with mutually repugnant provisions. Nothing in Montrose precludes the application of equitable principles to resolve the conflicting other insurance clauses. In fact, later in the opinion, Montrose pointed out, "courts will generally apply equitable considerations to spread the cost among the several policies and insurers" in the absence of "express policy language decreeing the manner of apportionment of contribution among successive liability insurers...." (Montrose Chemical Corp. v. Admiral Ins. Co., supra, 10 Cal.4th at p. 687, 42 Cal.Rptr.2d 324, 913 P.2d 878; see also Aerojet-General Corp. v. Transport Indemnity Co. (1997) 17 Cal.4th 38, 57, fn. 10, 70 Cal.Rptr.2d 118, 948 P.2d 909.)
Defendant's citation of American Continental Ins. Co. v. American Casualty Co. (1999) 73 Cal.App.4th 508, 86 Cal.Rptr.2d 560 for the proposition that plaintiff had to exhaust the limits of its policy before seeking contribution from defendant is unavailing because defendant misstates the holding of the case. American Continental arose from a wrongful death action brought against a hospital and a nurse employed by the hospital. The plaintiff had issued both a $1 million primary policy and a $10 million umbrella policy covering the hospital and its employees. The defendant had issued a $1 million primary policy to the nurse. The plaintiff's primary policy contained a clause stating that if the insured had "`other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of ... liability under this policy shall not be reduced by the existence of such other insurance.'" (Id. at p. 515, 86 Cal.Rptr.2d 560.) The defendant's policy contained an excess only other insurance provision. After the jury returned a verdict finding the hospital and nurse jointly liable, the plaintiff settled, paying nearly $1.7 million. The plaintiff then successfully sued the defendant, obtaining a declaration the latter was required to reimburse it for the amount exceeding $1 million.
The appellate court affirmed the judgment. Acknowledging the pro rata contribution rule declared in Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra, 65 Cal.App.4th 1279, 77 Cal.Rptr.2d 296, the court found it distinguishable because the plaintiff's policy provided "its exposure was not to be reduced by the existence of other insurance...." (American Continental Ins. Co. v. American Casualty Co., supra, 73 Cal.App.4th at p. 516, 86 Cal.Rptr.2d 560.) While in a footnote, American Continental recognized the plaintiff's policy also contained a second clause limiting its liability to "a fifty-fifty allocation" where other applicable insurance existed (id. at p. 516, fn. 2, 86 Cal.Rptr.2d 560), the court noted "American Continental makes no claim under [that] paragraph ... of its ... policy," and declined to "express [an] opinion on whether American Continental would have been entitled to such an allocation" in that case. (Ibid.; see also Century Surety Co. v. United Pacific Ins. Co., supra, 109 Cal.App.4th at p. 1257, fn. 5, 135 Cal.Rptr.2d 879.)
*533 Finally, defendant relies on the recent decision in Hartford Casualty Ins. Co. v. Travelers Indemnity Co. (2003) 110 Cal.App.4th 710, 2 Cal.Rptr.3d 18. Hartford involved a dispute concerning the contribution rights of liability insurers for a building tenant (Hartford) and its landlord (Travelers) arising from a wrongful death action. The tenant's lease required it to name the landlord as an additional insured under its liability insurance policy. In addition, the landlord's policy declared it was "`excess'" over other "`valid and collectible Insurance ... if [the landlord was] added as an additional insured under any other policy.'" (Id. at pp. 714-715, 2 Cal.Rptr.3d 18.) One of the tenant's employees fell from a third-story exterior deck and died. The insurers settled the underlying action and then filed competing declaratory relief actions against each other. The trial court found Hartford, the tenant's insurer, obligated to pay all of the underlying lawsuit's defense and indemnity costs, declaring Travelers, the landlord's insurer, was an additional insured under the terms of both the tenant's lease and its liability insurance policy.
The Court of Appeal affirmed. In part, it rejected Hartford's claim for a pro rata reimbursement. Acknowledging Fireman's Fund holding concerning excess other insurance clauses, the Hartford court stated it "d[id] not disagree with the discussion or result in Fireman's Fund." (Hartford Casualty Ins. Co. v. Travelers Indemnity Co., supra, 110 Cal.App.4th at p. 725, 2 Cal.Rptr.3d 18.) But, given the equitable nature of the pro rata contribution rule, and the fact that Hartford and Travelers's policies contained narrow exceptions to their operation as primary insurance which did not conflict with each other, Hartford "reach[ed] a different result based on the facts and equities of this case." (Id. at pp. 725, 726-727, 2 Cal.Rptr.3d 18.) The present case is much closer to Fireman's Fund than it is to Hartford, and practically indistinguishable from Century Surety Co. which followed Fireman's Fund.
Defendant cites two other facts it claims render plaintiff's recovery in this case inequitable: (1) Plaintiff's delay in providing a defense and refusal to share in the cost of the attorney initially retained by defendant and CNA, and (2) defendant's status as a non-admitted surplus lines carrier. As for the first ground, the simple fact is plaintiff did provide Standard with a defense and eventually paid the lion's share of the Canyon Estates settlement. On the second point, defendant provides no legal authority to show a different rule applies because of its status. We conclude the trial court properly determined it would be inequitable to honor defendant's excess other insurance clause in this case.

DISPOSITION
The judgment is affirmed. Respondent shall recover its costs on appeal.
WE CONCUR: SILLS, P.J., and MOORE, J.