Filed 11/13/15 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| UNDERWRITERS OF INTEREST SUBSCRIBING TO POLICY NUMBER A15274001, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> PROBUILDERS SPECIALTY INSURANCE COMPANY, <br><br> Defendant and Respondent. | D066615 <br><br> (Super. Ct. No. 37-2012-00058368-CU-IC-NC) <br><br> ORDER MODIFYING OPINION AND DENYING REHEARING <br><br> NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on October 23, 2015, be modified as follows:

1. The first full paragraph on page 21, beginning with "ProBuilders has suggested" through the first full paragraph on page 22, ending with "in the underlying action" is deleted and replaced with the following:

"The equitable tolling approach applied in *Lambert* and *Eaton Hydraulics* was applied, at least implicitly, to an analogous action in which the plaintiff insurer sought equitable contribution from a nonparticipating insurer and alleged the nonparticipating

insurer wrongfully refused to participate in the defense or indemnification of their mutual insured. (See, e.g., *OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.* (2009) 175 Cal.App.4th 183, 188, 206-208 [Court of Appeal specifically awarded defense fees and costs incurred by OneBeacon in 1999 in its equitable contribution action filed by OneBeacon in 2005, not merely costs incurred within two years of filing date].) ProBuilders has provided no persuasive reason why its proposed rule, which is different from the equitable tolling approach applied in *Lambert* and *Eaton Hydraulics*, should apply here. ProBuilders has suggested, in its petition for rehearing, that *Lambert* adopted equitable tolling only because the plaintiff in *Lambert* was an insured, and that rationale has no application to a dispute among insurers. However, *Lambert* fashioned its tolling rules by examining and applying equitable doctrines, and because "[n]umerous cases have reinforced the principle that an action for equitable contribution [among insurers] is rooted in equity" (*American States Ins. Co. v National Fire Ins. Co. of Hartford* (2011) 202 Cal.App.4th 692, 700), we believe the same equitable tolling rules applied in *Lambert* can, and should, be applied to the analogous context of an action by a plaintiff insurer seeking equitable contribution from a nonparticipating insurer.

"Moreover, the contrary approach for which ProBuilders advocates could harm the interests of judicial economy without providing any significant offsetting benefits. The ProBuilders approach would, for example, force the plaintiff insurer to file suit while it was still incurring damages and then either bring serial motions to amend its complaint (after each new payment of defense costs was made by the plaintiff insurer) or, alternatively, to file a new action as each new payment of unreimbursed costs was paid,

2

because ProBuilders's approach would apparently trigger a new limitations period for such payment.

"We conclude *Lambert* is sufficiently analogous to permit importation of the same approach to contribution actions among co-insurers. We hold the limitation period for a contribution action accrues when the noncontributing insurer first refuses the demand to contribute, but that the two-year statute of limitations is tolled until all of the defense obligations in the underlying action are terminated by final judgment in the underlying action."

There is no change in the judgment.

The petition for rehearing is denied.

McCONNELL, P. J.

Copies to: All parties

3

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| UNDERWRITERS OF INTEREST SUBSCRIBING TO POLICY NUMBER A15274001, | D066615 |
| Plaintiff and Appellant, | (Super. Ct. No. 37-2012-00058368-CU-IC-NC) |
| v. | |
| PROBUILDERS SPECIALTY INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy M. Casserly, Judge. Reversed.

Wolkin Curran, Brandt L. Wolkin, Amy K. Thomas and Dawn A. Silberstein for Plaintiff and Appellant.

Berger Kahn, David B. Ezra and Erin R. Mindoro for Defendant and Respondent.

Pacific Trades Construction & Development, Inc. (Pacific Trades) was a defendant in a lawsuit that alleged, in part, that Pacific Trades was liable for damages for construction defects caused by Pacific Trades's negligent acts or omissions. Underwriters of Interest Subscribing to Policy Number A15274001 (Underwriters) undertook Pacific

Trades's defense in that action under its Commercial General Liability (CGL) policy insuring Pacific Trades. ProBuilders Specialty Insurance Company (ProBuilders), which also insured Pacific Trades, declined to participate in funding Pacific Trades's defense, claiming (among other things) that a clause in its policy relieved ProBuilders of any duty to defend Pacific Trades when another insurer was doing so.

In this current action, Underwriters sought equitable contribution from ProBuilders for a portion of the defense costs. The parties filed cross-motions seeking summary adjudication of ProBuilders's liability for a portion of the defense costs. The trial court agreed with ProBuilders that a clause in its policy relieved it of any duty to defend Pacific Trades when (as here) another insurer was defending Pacific Trades, and entered summary judgment in favor of ProBuilders. Underwriters appeals that determination.

We conclude the trial court erred in enforcing the clause in ProBuilders's policy and, because the other arguments raised by ProBuilders in support of its summary judgment motion on Underwriters's claim for equitable contribution do not support the judgment, we reverse the judgment.

I

FACTS

A. The Policies

Underwriters issued a Commercial General Liability (CGL) policy insuring Pacific Trades, among others, in effect between October 23, 2001, and October 23, 2003 (Underwriters's policy). ProBuilders also issued policies insuring Pacific Trades, in

2

effect between December 9, 2002, and December 9, 2004 (ProBuilders's policies), providing for indemnification against liability for many of the same risks encompassed by Underwriters's policy.

ProBuilders's policies contained an "other insurance" clause that stated ProBuilders had "the right and duty to defend [Pacific Trades] against any **suit** seeking . . . damages [to which the insurance applied] provided that no other insurance affording a defense against such a suit is available to **you**." Underwriters's policy also included other insurance provisions that provided, under certain conditions, Underwriters would *also* be excused from any duty to defend Pacific Trades.[1]

B. The Lawsuit

Pacific Trades was named as a defendant in a lawsuit (the Aceves lawsuit) that alleged, in part, that Pacific Trades was liable for damages to multiple separate single family homes caused by construction defects allegedly due to its negligent acts or omissions.[2] In April 2007 ProBuilders was notified of the Aceves action, which it

---

[1] Underwriters's policy provided its policy would be "excess" over any other "primary insurance available to you [Pacific Trades] . . . for which you have been added as an additional insured by attachment of an endorsement. When this insurance is excess, we will have no duty . . . to defend [Pacific Trades] against any 'suit' if any other insurer has a duty to defend the insured against that 'suit.' " Underwriters produced some evidence below that ProBuilders had issued primary policies to various subcontractors that named Pacific Trades (and other defendants in the Aceves lawsuit for whom Underwriters had provided a defense) as an "additional insured," which could have provided Underwriters with a competing basis for asserting it was excused from any duty to defend Pacific Trades in the Aceves lawsuit because of the presence of other insurance.

[2] Other named defendants in Aceves lawsuit included Paseo Del Sol Imperial, LLC, Paseo Del Sol Norte, LLC, and Paseo Del Sol Dos, LLC, which were allegedly the

subsequently acknowledged in November 2007 included claims giving rise to a "potential for indemnity exposure of a covered form of loss." However, in that same November 2007 communication, ProBuilders informed Pacific Trades that, although there was a potential for indemnity coverage under its policies, ProBuilders would not participate in providing a defense to Pacific Trades because Pacific Trades was "currently being defended by another carrier."

The carrier that provided that defense, Underwriters, had hired counsel to defend Pacific Trades (along with other named defendants) in the underlying action by July 2007. As early as 2009, Underwriters demanded that ProBuilders participate in funding the defense of the Aceves action. ProBuilders never contributed to funding the defense.

In 2010, the parties to the Aceves action negotiated a settlement amounting to approximately $1 million to be paid to the plaintiffs, and ProBuilders ultimately contributed $270,000 to that settlement. The settlement was confirmed as a good faith settlement in October 2010. However, the insurers' payments to fund that settlement, along with execution of the necessary settlement agreements by the numerous parties to the Aceves action and final dismissal of the suit, lingered into 2011. Underwriters continued to pay Pacific Trades's defense counsel for services connected to the Aceves lawsuit until at least March 2011.

C. The Present Action

After the underlying Aceves action was finally settled and dismissed as to Pacific Trades, Underwriters filed this action in November 2012 against ProBuilders seeking

developers and/or general contractors for the properties and projects containing the allegedly defective construction.

4

equitable contribution from it for some of the defense costs paid by Underwriters in connection with defense of the underlying action. ProBuilders and Underwriters filed cross-motions for summary judgment and summary adjudication, respectively, seeking a determination of whether ProBuilders had any obligations to contribute to the defense of their mutual insured.

ProBuilders's motion for summary judgment asserted it had no obligation to pay any portion of the defense costs based, in part, on its argument that the terms of its policies excused it from any obligation to defend Pacific Trades once Underwriters undertook that defense. ProBuilders also asserted it had no obligation to pay any portion of the defense costs because (1) Underwriters's action for equitable contribution was time-barred, (2) Pacific Trades had not satisfied a condition precedent (contained in the "Contractors Special Conditions" endorsement to the ProBuilders's policies) to ProBuilders's obligation to indemnify Pacific Trades, and (3) Underwriters refused to supply ProBuilders with the billings from the attorneys that formed the basis of the monetary amounts it sought from ProBuilders. Underwriters opposed ProBuilders's motion, arguing the terms of the policies purporting to excuse ProBuilders's defense obligation constituted an "escape" clause, which is routinely disregarded by California courts. Underwriters also asserted the other grounds raised by ProBuilders in support of its summary judgment motion were inadequate to grant the motion, because (1) Underwriters's action was timely because it was filed less than two years after it made its final payment towards the attorney fees that formed the basis for its equitable contribution action, (2) the Contractors Special Conditions (CSC) argument did not

5

support summary judgment,[3] and (3) ProBuilders's argument that Underwriters's alleged refusal to turn over billing statements justified summary judgment was legally unsupported and factually erroneous.

Underwriters's motion sought summary adjudication that ProBuilders had the duty to defend Pacific Trades in the underlying Aceves lawsuit, arguing that lawsuit gave rise to a potential covered claim and therefore triggered ProBuilders's duty to defend Pacific Trades in the Aceves lawsuit, and reasserting the "other insurance" clause contained in ProBuilders's policies did not excuse that obligation because it is an unenforceable escape clause. Underwriters also asserted the CSC endorsement did not excuse ProBuilders from providing Pacific Trades with a defense, and no other provisions barred Underwriters's right to seek equitable contribution for the defense costs it paid. ProBuilders opposed Underwriters's motion on the same grounds it raised in support of its motion for summary judgment.

The trial court ruled in favor of ProBuilders, concluding the "other insurance" clause in its policies obligated ProBuilders to defend Pacific Trades only if no other insurance affording a defense was available to Pacific Trades, and because Underwriters provided other insurance affording a defense to Pacific Trades against the Aceves lawsuit, the express terms of the "other insurance" clause in ProBuilders's policies

---

3    Underwriters argued the Contractors Special Conditions clause was too uncertain to be enforceable, and it contained internal limitations that rendered it inapplicable to ProBuilders's duty to defend the action against Pacific Trades. Underwriters also argued that, even assuming it was applicable to limit ProBuilders's duty to defend, there were triable issues of fact as to whether Pacific Trades *had* satisfied the Contractors Special Conditions clause.

excused ProBuilders from paying for any part of the defense costs in the Aceves lawsuit. This appeal followed.

## II

## APPLICABLE LEGAL PRINCIPLES

A. <u>Summary Judgment Standards</u>

The summary judgment procedure is directed at revealing whether there is evidence that requires the fact-weighing procedures of a trial. " '[T]he trial court in ruling on a motion for summary judgment is merely to determine whether such issues of fact exist, and not to decide the merits of the issues themselves.' [Citation.] The trial judge determines whether triable issues of fact exist by reviewing the affidavits and evidence before him or her and the reasonable inferences which may be drawn from those facts." (*Morgan v. Fuji Country USA, Inc.* (1995) 34 Cal.App.4th 127, 131.) To prevail on a motion for summary judgment, a defendant must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (o).) The evidence of the moving party is strictly construed and that of the opponent liberally construed, and any doubts as to the propriety of granting the motion are to be resolved in favor of the party opposing the motion. (*Branco v. Kearny Moto Park, Inc.* (1995) 37 Cal.App.4th 184, 189.)

Summary judgment should be granted only when a moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) Because a motion for summary judgment raises only questions of law, we independently review the parties' supporting and opposing papers and apply the same standard as the trial court to

7

determine whether there exists a triable issue of material fact. (*City of San Diego v. U.S. Gypsum Co.* (1994) 30 Cal.App.4th 575, 582; *Southern Cal. Rapid Transit Dist. v. Superior Court* (1994) 30 Cal.App.4th 713, 723.) Additionally, because the interpretation of the insuring agreement is a question of law, we apply de novo review to any determinations as to that issue (*Standard Fire Ins. Co. v. Spectrum Community Assn.* (2006) 141 Cal.App.4th 1117, 1124), including the determination of whether the terms of an "other insurance" clause in a defendant coinsurer's policy permits it to avoid contributing to the defense and indemnification costs the plaintiff co-insurer incurred on behalf of their mutual insured. (*Travelers Casualty & Surety Co. v. Century Surety Co.* (2004) 118 Cal.App.4th 1156, 1159 (*Travelers*).)

B. Equitable Contribution Standards

Underwriters's action pleaded a claim for equitable contribution from a co-insurer of a mutual insured. "Equitable contribution is the right to recover from a co-obligor who shares a liability with the party seeking contribution." (*North American Capacity Ins. Co. v. Claremont Liability Ins. Co.* (2009) 177 Cal.App.4th 272, 295.) As explained by one court, "the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action . . . . Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was *equally* and *concurrently* owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the risk. The purpose of this rule of equity is to accomplish substantial

8

justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others." (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1293 (*Fireman's Fund*).) The right to seek equitable contribution "is predicated on the commonsense principle that where multiple insurers or indemnitors share equal contractual liability for the primary indemnification of a loss or the discharge of an obligation, the selection of which indemnitor is to bear the loss should not be left to the often arbitrary choice of the loss claimant, and no indemnitor should have any incentive to avoid paying a just claim in the hope the claimant will obtain full payment from another coindemnitor. [Citations.] Equitable contribution thus assumes the existence of two or more valid contracts of insurance covering the particular risk of loss and the particular casualty in question." (*Id.* at p. 1295.)

III

ANALYSIS

A. The Trial Court Erred by Enforcing ProBuilders's Escape Clause

ProBuilders on appeal does not suggest that its policies did not provide at least overlapping "primary" coverage with Underwriters's policy for the types of claims asserted against Pacific Trades in the Aceves lawsuit.[4] Instead, ProBuilders argues on

---

[4]    Underwriters notes the evidence below raised at least a triable issue of fact on two other significant issues related to the Aceves lawsuit: whether ProBuilders's policies provided the *only* primary coverage available to Pacific Trades for certain periods of time related to the claims raised in the Aceves lawsuit when Underwriters's policy had provided *no* coverage due to the expiration of its policy period, and whether ProBuilders's policies provided the *only* primary coverage for Pacific Trades for projects involved in the Aceves lawsuit for which Underwriters's policy had provided *no* coverage due to the geographic limitations contained within that policy.

appeal, as it did below, that even though the claims were otherwise covered by its policies and would have required it to provide a defense absent the fortuity that Underwriters provided concurrent coverage, its "other insurance" clause plainly and conspicuously stated ProBuilders was relieved of that duty to defend its insured for such claims because of the presence of another insurance policy providing a defense against those claims, and therefore its "other insurance" provision excused ProBuilders of any duty to contribute to the defense of Pacific Trades and barred Underwriters from pursuing equitable contribution.

Ordinarily, an insurer is free to limit the risks it will assume and will be liable only for a loss within the terms of the policy (*Fresno Economy Import Used Cars, Inc. v. United States Fid. & Guar. Co.* (1977) 76 Cal.App.3d 272, 280), and a court will not rewrite the terms of a policy based solely on public policy reasons. (*Rosen v. State Farm General Ins. Co.* (2003) 30 Cal.4th 1070, 1078.) It is the ordinary rule that "[a]n insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected." (*Continental Cas. Co. v. Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 432.) Citing these general rules, ProBuilders argues its express "other insurance" clause, by providing that its duty to defend was subject to the condition that "no other insurance affording a defense against such a suit is available to **you**," exempted ProBuilders from any obligation to defend Pacific Trades in the Aceves lawsuit because Underwriters's policy *was* "available" to afford a defense to Pacific Trades. Accordingly, ProBuilders argues summary judgment on Underwriters's claim for equitable contribution for defense costs was proper because

10

Underwriters could not show an essential element of that claim, i.e., that ProBuilders was obligated to defend the same claim (the Aceves lawsuit) Underwriters was obligated to defend.

The clause ProBuilders seeks to enforce has been characterized by the courts as an escape clause[5]: it provides that ProBuilders *will* be liable to pay for defense costs for any suit seeking damages to which its insurance applied, but then purports to extinguish that obligation when there is "other insurance affording a defense against such suit . . . available to you."[6] As our Supreme Court explained in *Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1079-1080:

> " '[O]ther insurance' clauses that attempt to shift the burden away
> from one primary insurer wholly or largely to other insurers have
> been the objects of judicial distrust. '[P]ublic policy disfavors
> "escape" clauses, whereby coverage purports to evaporate in the

---

[5] As the court in *Olympic Ins. Co. v Employers Surplus Lines Ins. Co.* (1981) 126 Cal.App.3d 593, 598, explained: "A problem arises when two or more policies apply at the same level of coverage. Most insurance contracts include some provision attempting to limit the insurer's liability in the event that another insurance policy covers the same loss. [¶] There are several typical forms of 'other insurance' clauses: [¶] 1. Pro rata. This clause provides that if there is other valid and collectible insurance, then the insurer shall not be liable for more than his pro rata share of the loss. [¶] 2. Excess. This clause provides that if there is other valid and collectible insurance, then the insurer shall not be liable except to the extent that the loss exceeds such other valid and collectible insurance (i.e., this policy shall be excess to other valid and collectible insurance). [¶] 3. Escape. This clause provides that *the insurer is not liable for any loss that is covered by other insurance (i.e., the existence of other insurance extinguishes insurer's liability to the extent of such other insurance).*" (Italics added.)

[6] ProBuilders appears to argue its "other insurance" clause is *not* an escape clause because it ultimately contributed $270,000 to the fund used to settle the Aceves lawsuit. Even if this fact was relevant to whether the clause did not operate as an escape clause as to its *indemnification* obligations, ProBuilders does not explain how that fact is relevant to whether the clause operated as an escape clause as to its separate obligation to *defend* claims against Pacific Trades.

11

presence of other insurance. [Citations.] . . .' (*CSE Ins. Group v. Northbrook Property & Casualty Co.* (1994) 23 Cal.App.4th 1839, 1845 . . . .; [citation].) Partly for this reason, the modern trend is to require equitable contributions on a pro rata basis from all primary insurers regardless of the type of 'other insurance' clause in their policies."

The courts have repeatedly addressed—and rejected—arguments by insurers that an "other insurance" clause in their insuring agreement permitted them to evade their obligations by shifting the entire burden associated with defending and indemnifying a mutual insured onto a coinsurer. As the court explained in *Edmondson Property Management v. Kwock* (2007) 156 Cal.App.4th 197, 203-204, when "the 'other insurance' clause in [the] policy is written into an otherwise primary policy, the courts have considered this type of 'other insurance' clause as an 'escape' clause, a clause which attempts to have coverage, paid for with the insured's premiums, evaporate in the presence of other insurance. [Citations.] Escape clauses are discouraged and generally not given effect in actions where the insurance company who paid the liability is seeking equitable contribution from the carrier who is seeking to avoid the risk it was paid to cover." Numerous courts have therefore rejected "other insurance" clauses as a basis for avoiding contribution. (See, e.g., *Commerce & Industry Ins. Co. v. Chubb Custom Ins. Co.* (1999) 75 Cal.App.4th 739, 744 [insurer with "escape" clause required to contribute to loss]; *Travelers, supra,* 118 Cal.App.4th 1156 [insurer with purported "excess" clause required to contribute to defense and settlement costs]; *Century Surety Co. v. United Pacific Ins. Co.* (2003) 109 Cal.App.4th 1246 [same] (*Century Surety Co.*); *Fireman's Fund, supra,* 65 Cal.App.4th 1279 [same] ; *CSE Ins. Group v. Northbrook Property & Casualty Co., supra,* 23 Cal.App.4th 1839 [same]; *Peerless Cas. Co. v. Continental Cas.*

12

*Co.* (1956) 144 Cal.App.2d 617 [insurer with hybrid escape/excess clause required to contribute].)

We adhere to the "modern trend [of requiring] equitable contributions on a pro rata basis from all primary insurers regardless of the type of 'other insurance' clause in their policies" (*Dart Industries*, *Inc. v. Commercial Union Ins. Co., supra*, 28 Cal.4th at p. 1080) and believe the rationale of *Travelers, supra,* 118 Cal.App.4th 1156, decided on closely parallel facts, is persuasive here. In *Travelers*, the insurer seeking equitable contribution (Travelers) issued CGL policies over a five-year period covering a framing contractor (Standard), that contained a provision declaring that, if any other insurance was also primary, Travelers " 'will share with all that other insurance,' either in 'equal shares' where 'all of the other insurance permits,' or otherwise 'based on the ratio of [each insurer's] applicable limit of insurance to the total applicable limits of insurance of all insurers.' " (*Travelers,* at p. 1158.) The noncontributing insurer (Century) issued a primary commercial general liability policy to the same contractor, covering a later period, that contained an endorsement providing that if there was other valid and collectible insurance available to any insured for a loss covered by the Century policy, the Century policy would be " 'excess of such insurance and we will have no duty to defend any claim or "suit" that any other insurer has a duty to defend.' " (*Ibid.*) When Standard was sued by purchasers in a development alleging continuing damage to their properties caused by defective construction work, Travelers defended the action but Century ultimately declined to defend, asserting the clause excused it from any duty to defend or indemnify. (*Ibid.*) The court held Travelers was entitled to obtain equitable

13

contribution from Century for the defense and indemnification costs incurred on Standard's behalf even though Century's policy declared it would be excess to other valid and collectible insurance, specifically noting that:

> "Standard did not have any other liability insurance during the time [Century's] policy was in effect. Both plaintiff's and defendant's policies covered the same type of loss, but they contained conflicting other insurance clauses. Giving effect to defendant's other insurance provision, which is in the nature of an escape clause, would result in imposing on plaintiff the burden of shouldering that portion of a continuous loss attributable to the time when defendant was the only liability insurer covering Standard." (*Id*. at pp. 1161-1162.)

Here, as in *Travelers*, Underwriters's CGL policy provided primary coverage for the common insured for a specified period of time (as well as for a limited geographic area) and ProBuilders's policies provided primary coverage for the common insured for a different period of time (as well as for an apparently unlimited geographic area), and the allegations of the third-party action asserted the common insured cause damage to the homes by allegedly defective construction work, including some claims for which ProBuilders potentially provided the *only* primary policy available to Pacific Trades.[7]

Here, as in *Travelers,* Underwriters's policy contained a provision declaring that, if there was any other primary insurance available for a loss, Underwriters would share in equal shares where "all of the other insurance permits contribution by equal shares," or if any

---

[7]  Underwriters's policy coverage expired in October 2003, but many of the plaintiffs in the Aceves lawsuit purchased homes completed after that date but during the period ProBuilders's policies afforded coverage to Pacific Trades (e.g. through December 9, 2004), which arguably meant Underwriters's policy provided no coverage for those claimants. (See, e.g., *Baroco West, Inc. v. Scottsdale Ins. Co.* (2003) 110 Cal.App.4th 96, 103-104.) Accordingly, there is at least a triable issue of fact on whether there was *not* "other insurance affording a defense against such a suit . . . available to [Pacific Trades]" as to many of the claimants in the Aceves lawsuit.

other insurance did not permit contribution by equal shares, it would contribute by "limits" with each insurer's share "based on the ratio of [each insurer's] applicable limit of insurance to the total applicable limits of insurance of all insurers." Here, as in *Travelers,* ProBuilders's policy was *also* a primary commercial general liability policy, but it purports to provide that if there was other valid insurance available to provide a defense to Pacific Trades against claims otherwise covered by its policy, ProBuilders would be excused from its duty to defend that claim. Because giving effect to its "other insurance" provision, in the nature of an escape clause, would result in imposing on Underwriters the burden of shouldering that portion of the defense costs attributable to claims arising from a time when ProBuilders was the *only* liability insurer covering Pacific Trades, *Travelers* persuades us that the escape clause must be disregarded and Underwriters should be entitled to seek equitable contribution from ProBuilders for defense costs incurred on behalf of their mutual insured. Other courts, addressing analogous circumstances in which there were successive primary insurers and the claim by the third party involved a continuing-loss liability coverage over the span covered by multiple insurers, have declined to allow one of those insurers to employ an "other insurance" escape clause to avoid claims for equitable contribution by the contributing insurer. (See *Century Surety Co., supra,* 109 Cal.App.4th 1246.)

ProBuilders largely disregards the numerous cases, cited above, which have upheld the defending insurer's right to seek equitable contribution from a noncontributing primary insurer notwithstanding an escape clause in the noncontributing primary insurer's policy, but instead merely cites language from three cases that state, in general, that

15

escape clauses will be enforced as long as the insured is not left without coverage. Although the first case quoted by ProBuilders, *Travelers Casualty & Surety Co. v. American Equity Ins. Co.* (2001) 93 Cal.App.4th 1142, did state that the courts will " 'generally honor the language of excess "other insurance" clauses when no prejudice to the interests of the insured will ensue' " (*id*. at p. 1149), ProBuilders overlooks that the court (after cautioning "there are many exceptions" to that rule) (*ibid*.) went on to *uphold* the claim of the defending insurer for equitable contribution against the noncontributing insurer, rendering its language about " 'generally honor[ing] the language of excess "other insurance" clauses" to be dicta. The next case relied on by ProBuilders, *Nabisco, Inc. v. Transport Indemnity Co.* (1983) 143 Cal.App.3d 831, is even less apposite because the plaintiff there had expressly contracted with the insurer to provide an umbrella policy, that would have been triggered only after the plaintiff satisfied its self-insured retention, and the court merely enforced the terms of the policy for which the plaintiff had knowingly contracted. (See *Nabisco,* at pp. 836-837, fn. omitted ["Nabisco cannot seriously claim it had a reasonable expectation of general coverage under the Transport policy. It made a risk management decision not to buy coverage for the first $50,000. To rewrite the Transport policy to require it to defend under these circumstances would only create a serendipitous windfall for Nabisco."].) The final case quoted by ProBuilders, *Hartford Casualty Ins. Co. v. Travelers Indemnity Co*. (2003) 110 Cal.App.4th 710, appears to have involved such peculiar facts and specialized endorsements that it provides little guidance here, particularly because the *Hartford* court specifically noted its agreement with the result in *Century Surety Co., supra,* 109 Cal.App.4th 1246 (see

16

*Hartford*, at p. 726, fn. 13), which involved facts more closely aligned with those of this case.

The foregoing convinces us the trial court erred in concluding ProBuilders's escape clause may be enforced to preclude Underwriters from seeking equitable contribution from ProBuilders for a share of the defense costs incurred to defend their mutual insured from the claims raised in the Aceves lawsuit, and we therefore reverse the judgment.

B. The Alternative Grounds Raised Below Do Not Permit Affirmance of the Judgment

ProBuilders raised alternative grounds in support of its motion for summary judgment that the trial court did not address because of its conclusion the escape clause excused its duty to defend. ProBuilders asserts on appeal that, even if the trial court did err in granting summary judgment on the escape clause, these alternative grounds demonstrate the judgment in its favor was correct and argues we should affirm the judgment on one or more of these alternative grounds.

*The CSC Argument*

ProBuilders asserted below, and reargues on appeal, that an essential condition precedent to any coverage under its policies was not met and therefore it had no duty to defend or indemnify Pacific Trades for the claims asserted in the Aceves lawsuit. It argues Pacific Trades's failure to satisfy the CSC was fatal to Underwriters's action and permits us to affirm the summary judgment on the alternative ground that ProBuilders conclusively established it owed no defense obligation under the policies.

ProBuilders's policies contained the CSC endorsement that provided, as a "condition precedent to this policy applying to any claim in whole or in part based upon work performed by independent contractors," Pacific Trades must have (1) obtained valid written indemnity agreements from the subcontractors it hired to build the homes, and (2) obtained Certificates of Insurance from the subcontractors it hired showing Pacific Trades was an additional insured under the subcontractors' insurance policies, and (3) maintained records evidencing compliance with those obligations. ProBuilders produced some evidence below that only 13 of Pacific Trades's subcontractors had written contracts with Pacific Trades, and Underwriters was unable to collect any defense reimbursements from any subcontractor. Based on this evidentiary showing, ProBuilders asserts it conclusively demonstrated there was no coverage for the claims asserted in the Aceves lawsuit, which was fatal to Underwriters's claim for equitable contribution, and therefore we may affirm the entry of summary judgment in favor of ProBuilders on the alternative ground that it conclusively established it owed no defense obligation under the policies.

We are not persuaded by ProBuilders's argument, for several reasons. First, the CSC provision on its face applies only to claims against Pacific Trades "in whole or in part based on work performed by independent contractors," but does not purport to apply to claims against Pacific Trades for its own negligence or other misfeasance. ProBuilders's showing below did not conclusively establish that *all* of the claims against Pacific Trades in the Aceves lawsuit were *limited* to claims based on work performed by independent contractors; to the contrary, the attorney hired to defend it in the underlying

18

action averred Pacific Trades was included as a defendant based on allegations of Pacific Trades's own negligence. Because ProBuilders's showing was inadequate to definitively eliminate the potential for coverage under the CSC provision for some part of the claims against Pacific Trades, its showing was inadequate to enter summary judgment against Underwriters's claim for equitable contribution. (See *Evanston Ins. Co. v. American Safety Indemnity Co.* (N.D. Cal. 2011) 768 F.Supp.2d 1004.) Second, even assuming some of the claims against Pacific Trades in the Aceves lawsuit *were* "based on work performed by independent contractors" within the ambit of the CSC provision, there was some evidence below raising a triable issue of fact as to whether Pacific Trades *had* complied with its terms, because the record below contained at least one written subcontract between Pacific Trades and a subcontractor, and the record also contained numerous Certificates of Insurance showing Pacific Trades *was* an additional insured under many subcontractors' insurance policies. We conclude ProBuilders's argument that summary judgment was proper based on Pacific Trades's alleged noncompliance with the CSC provision is without merit.

### *The Statute of Limitations Argument*

ProBuilders asserted below, and reargues on appeal, that Underwriters's action for equitable contribution was time-barred, and we should therefore affirm the order granting summary judgment on that alternative ground.

The parties do not dispute that the two-year statute of limitations applies to an action by an insurer seeking equitable contribution from another insurer. (*Century Indemnity Co. v. Superior Court* (1996) 50 Cal.App.4th 1115, 1124.) Moreover, the facts

19

are not in dispute. Underwriters's action was filed *more* than two years after ProBuilders's initial refusal to contribute defense costs, and *more* than two years after the court in the underlying Aceves lawsuit confirmed the settlement between Pacific Trades and the Aceves plaintiffs as a good faith settlement. However, Underwriters's action was filed *less* than two years after the insurers contributed their payments to fund that settlement, and *less* than two years after the necessary settlement agreements by the numerous parties to the Aceves action were signed and the Aceves suit was finally dismissed as to Pacific Trades, and *less* than two years after Underwriters's final payment to the defense counsel hired to represent Pacific Trades.

Neither party has identified any California case authority directly on point. However, we are persuaded by analogous authority that, although an action for equitable contribution can *accrue* when the noncontributing insurer first refuses to participate in the defense of a common insured, the statute of limitations should be equitably *tolled* until the plaintiff insurer makes the last payment in the underlying suit for which the plaintiff insurer is seeking contribution. In *Lambert v. Commonwealth Land Title Ins. Co.* (1991) 53 Cal.3d 1072, the court evaluated whether an insured's action against its insurer, seeking to recover the costs of defense the insured incurred when the insurer breached its obligation to provide a defense to the underlying action, would be time-barred if the insured waited until the underlying action was terminated—and beyond two years after the insurer initial refusal to defend—before commencing its suit against the insurer. The *Lambert* court noted that the "duty to defend . . . under general liability policies . . . [citations] . . . commences upon tender of the defense, and continues until the underlying

20

lawsuit is concluded. [Citation.] Because the underlying litigation may take over two years (as in this case), the [contrary] rule [citation] would allow expiration of the statute of limitations on a lawsuit to vindicate the duty to defend even before the duty itself expires. This grim result is untenable." (*Id*. at p. 1077.) Accordingly, the *Lambert* court held that "the limitation period for an action . . . for failure to defend accrues when the insurer refuses the insured's tender of defense, but is tolled until the underlying action is terminated by final judgment." (*Id*. at p. 1080; accord, *Eaton Hydraulics Inc. v. Continental Casualty Co.* (2005) 132 Cal.App.4th 966, 973 ["it is settled that the duty to defend is continuing, and that the limitations period is equitably tolled from the time the cause of action accrues—upon CNA's refusal to defend—until the underlying lawsuit is terminated by a final judgment"].)

ProBuilders has suggested no reason why a different rule should apply here, and other courts have implicitly applied that approach when an insurer sought equitable contribution from a nonparticipating insurer alleging the insurer wrongfully refused to participate in the defense or indemnification of their mutual insured. (See, e.g., *OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.* (2009) 175 Cal.App.4th 183, 189-209 [Court of Appeal specifically awarded defense fees and costs incurred by OneBeacon in 1999 in its equitable contribution action filed by OneBeacon in 2005, not merely costs incurred within two years of filing date].) Moreover, were we to adopt the approach advocated by ProBuilders, myriad problems would be present. For example, it would force the plaintiff insurer to file suit prematurely, before all of the damages are ascertained, and then presumably amend its complaint from time to time after each new

21

payment of defense costs was made by the plaintiff insurer. Alternatively, ProBuilders's approach could require the plaintiff insurer to file multiple actions, especially if the contribution action proceeded to trial before the conclusion of the underlying lawsuit. Neither scenario would promote judicial economy or the orderly resolution of claims.

We conclude *Lambert* is sufficiently analogous to require that we import the same approach into contribution actions among co-insurers. We hold the limitation period for a contribution action accrues when the noncontributing insurer first refuses the demand to contribute, but that the two-year statute of limitations is tolled until all of the defense obligations in the underlying action are terminated by final judgment in the underlying action.

C. The "Discovery" Argument

ProBuilders finally argues that, because Underwriters's action sought damages based on the legal bills it paid to defend Pacific Trades but Underwriters refused to produce those bills in response to ProBuilders's discovery requests, Underwriters's action was properly dismissed. Even assuming ProBuilders's factual predicate to be correct,[8] it cited no authority below, nor has it cited any authority on appeal, that a party may seek to terminate a lawsuit by a summary judgment motion based on alleged defalcations in

---

[8] Underwriters's showing in opposition to the summary judgment motion included evidence it did produce documents evidencing the amount it paid to defend Pacific Trades, including "a comprehensive payment log, contemporaneous check requests, and cancelled checks." Moreover, Underwriters's showing in opposition to the summary judgment motion included evidence that it did not "refuse" to produce invoices from defense counsel, but was instead willing to produce those documents as long as appropriate protective measures were agreed upon to preserve the attorney-client privilege belonging to Pacific Trades, but ProBuilders never agreed to the proposed conditions.

22

discovery responses rather than pursuing so-called "terminating" sanctions for discovery violations as set forth in the Code of Civil Procedure.  We conclude ProBuilders's remedy, if any, for Underwriters's alleged "refusal" to produce certain documents is to pursue the "discovery statutes['] . . . incremental approach to discovery sanctions" (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 992), and the trial court's entry of summary judgment against Underwriters cannot be upheld based on the alleged—and disputed—refusal of Underwriters to produce certain documents.

## DISPOSITION

The judgment is reversed.  Underwriters shall recover its costs on appeal.


McDONALD, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

23